UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20CR0707 AGF (SRW) |
| | ) | |
| MATTHEW THILGES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER TO GOVERNMENT'S RESPONSE AND SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

COMES NOW the Defendant, through his attorney, Shawn Goulet, responds to the Government's Response to Defendant's Motion to Suppress Evidence and Statements. Doc #39 and Doc. #34.

## INTRODUCTION

On June 10, 2021, the Defendant, through the Assistant Federal Public Attorney, filed a motion to suppress all evidence and statements made between October 21, 2020 and October 23, 2020.  The defendant is asking for the evidence to be suppressed under the basis that the first search warrant was based on statements that would not fall under "true threats" and the statements involving politics and violence did not rise to a criminal violation.  The government has filed their response to their response on July 21, 2021.

1

## STATEMENT OF FACTS

The facts will be incorporated from the Defendant's first motion to suppress and the government's reply.

## LEGAL ANALYSIS

### THE FIRST SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE AND THE DEFENDANT'S COMMENTS WERE NOT "TRUE THREATS"

The government has argued that the warrant lays out that the online threats the defendant made meet the elements of 875(c) and were valid and meet the standard of probable cause. The government argues that the threats are more than general offensive opinions and are very violent in nature and sometimes specifics a victim. The search warrant makes mention of sixteen "threats" in the warrant. On their face they may be vulgar but they do not rise to the level of a true threat when placed in the context that was absent in the search warrant.

The government uses the standard set out in *United States v. Davis* in regard to when probable cause is sufficient when issuing a search warrant and states that a judge's finding that a search warrant has probable cause deserves great deference. This is true but an exception exists when information is omitted. The Eighth Circuit has found in *United States v. Reinholz,* 245 F.3d 765, 774 (8th Cir. 2001) that a search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth. 245 F.3d 765, 774 (8th Cir. 2001) quoting *Franks v. Delaware, 438 U.S. at 171,* 98 S.Ct. 2674 (1978).

The Fourth Amendment requires that search warrants be based on probable cause. *United States v. Montes-Medina,* 570 F.3d 1052, 1059 (8th Cir. 2009). Affidavits for search warrants are reviewed using the "totality of circumstances" analysis. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). When deciding if a warrant is based on sufficient probable cause, this Court must ensure that the judge who issued the warrant had a " 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates,* 103 S. Ct. 2317, 2332 (1983), *quoting Jones v. United States,* 362 U.S. 257, 271 (1960).

In *United States. v. Reinholz*, the court cited that "a search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth. 245 F.3d 765, 774 (8th Cir. 2001) quoting *Franks v. Delaware, 438 U.S. at 171,* 98 S.Ct. 2674 (1978). To prevail on a *Franks* claim the defendants must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) that the affidavit's remaining content is insufficient to establish probable cause. The same analysis applies to omissions of fact. The defendant must show: (1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995).

    I.    **FACTS WERE OMITTED FROM THE AFFIDAVIT OF THE FIRST SEARCH WARRANT**

In the Government's affidavit there were a number of statements listed in order to justify probably cause. See Ex. 1a at pages 9-11. However, these statements were incomplete and severely impairs the judgment of a probable cause finding as the context of these examples was not included. Some examples that were set out in the search warrants left out that the Defendant posted these comments on YouTube videos where he believed likeminded people existed. Most of the defendant's posts existed on comment sections of videos like "USA Today says Civil War is coming. IS IT?", multiple Q Anon "truths", and videos from creators deemed far-right with opinions that match those of the defendant. The Defendant never once reached out directly to Jack Dorsey or Susan Wojcicki and the threats in question disappeared the moment YouTube took down many of the videos listed in the search warrant for violation of community guidelines.

Along with the subject matter a substantial amount came from videos that had a similar ideology like that of Q-anon, where the comments matched the content of the video or these videos attracted a small following that were unlikely to attract those who the government believe are being threatened. These videos include:

1. "You Can Test YouTube's Agenda Right Now – WHY WOULD THEY DO THIS", a video with approximately 36,000 views at the time of the affidavit.
2. You're Invited to My Protest at Twitter, with approx. 4,000 views.
3. "Shots Fired in the Media War! Corbett Report Hit! with approx. 57,000 views.
4. "Google Employee Killed While Jogging in Massachusetts" with approx. 32,000 views.
5. "Eight Illegal Alien Families Are Being Suing U.S. Taxpayers for $48 MILLION Over Border Detention Policies" by MRCTV, a far-right news outlet, with approximately

18,000 views.

With the context regarding the location of these comments a reasonable person could determine and understand the motive, context, and audience of these comments and would find that they do not fall under True Threats under 875(c).

## II.   THESE STATEMENTS DO NOT MEET "TRUE THREATS" UNDER TITLE 18 U.S.C. SECTION 875(c)

The online comments made by the Defendant are protected by the First Amendment and cannot be categorized as "true threats" as under Section 875(c). The government disagrees and points to the Supreme Court's analysis in *Virginia v. Black* as a base line that this court should use in that:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. See *Watts v. United States, supra,* at 708, 89 S.Ct. 1399 ("political hyperbole" is not a true threat); *R.A.V. v. City of St. Paul,* 505 U.S., at 388, 112 S.Ct. 2538. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." *Ibid.* Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death. *Id.* at 359-360.

The application of this rule in *Black* only further highlights the Defendant's actions as free speech. In *Black,* the matter was not of the defendants' actions, who had burned a cross in an individual's yard but if Virginia's law in banning the burning of crosses with the intent to intimidate was a violation of the First Amendment. The Court ruled that the history of cross burnings played a factor into the law which alone would likely have been enough to not violate the First Amendment but on its face the law is too broad because it bans all cross burnings

5

regardless of intent.  The Court states that "even where a defendant like Black presents a defense, the provision makes it more likely that the jury will find an intent to intimidate regardless of the particular facts of the case. It permits the Commonwealth to arrest, prosecute, and convict a person based solely on the fact of cross burning itself. **As so interpreted, it would create an unacceptable risk of the suppression of ideas.** *E.g., Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U. S. 947, 965, n. 13. The act of burning a cross may mean that a person is engaging in constitutionally proscribable intimidation, or it may mean only that the person is engaged in core political speech. The prima facie evidence provision blurs the line between these meanings**, ignoring all of the contextual factors that are necessary to decide whether a particular cross burning is intended to intimidate**. **The First Amendment does not permit such a shortcut.** *Id.* at 346.

    The Court in *Black* affirms that context matters because if it didn't the Court argued that a basic provision like that in Virginia blurred the lines between "threats of intimidation" and the Klu Klux Klan's shared views of ideology.  When looking at the videos in which Mr. Thilges posted his comments it can be clearly seen that these comments fell under the latter as they were often based in Qanon ideology and far-right commentary that were visited by those like-minded and not those he is directly in opposition with.

    The government also looks to *United States v. Mabie,* 663 F.3d 322 at 332 (8th Cir. 2011) to find an objective test for what constitutes a true threat believing that it does not matter the subjective intent of the speaker. The *Mabie* case is materially different from Mr. Thilges, in that Mabie, mailed and left threatening voicemails to multiple individuals, he found their address, some unlisted, and discovered information about their families and proceeded to

6

threaten their lives. Mr. Thigle only posted on social media on videos and articles that were not authored by him or published by Jack Dorsey or Susan Wojcicki. He did not reach out to these individuals or send anything to the physical places of business. All of his comments remained online and without direct contact with those he made comments about. In *Mabie*, the subjective intention did not matter because of the steps taken by Mabie in his attempt to intimidate and threaten those individuals. Those individuals were directly contacted and were private citizens or ones whose nature in the public forum were not on the same level as a Jack Dorsey or Susan Wojcicki.

Finally, the government enforced their belief that this fell under a "true threat" through the court in *United States v. Stevens,* as an example that even those in the national spotlight do not forfeit their rights to protection from threats. The Tenth Circuit held that, "[a]s to a message's language, we have warned against 'rigid adherence to the literal meaning of a communication without regard to its reasonable connotations....' *Dillard,* 795 F.3d at 1201 (quoting *United States v. Turner,* 720 F.3d 411, 422 (2d Cir. 2013) ). For example, [a] defendant cannot escape potential liability simply by using the passive voice or couching a threat in terms of 'someone' committing an act of violence'" *Id.* at 1253-4.

Again, this case is different from the Defendant's as in *Stevens,* the defendant who lived in Connecticut sent ten threatening messages, via an online public forum, directly to the Tulsa Police Department, after an officer involved shooting that made national news. *Id.* at 1251. Stevens had argued that his messages were not true threats because they were political speech and he did not have the intent or ability to carry out the threat. The Court of Appeals upheld his conviction and found that even though Mr. Stevens' messages concerned an event, "that garnered

national attention and was a part of larger political debate," it did not preclude them from being communications of a true threat. "As we said in *Viefhaus,* even if 'a specific threat accompanies pure political speech[, this] does not shield a defendant from culpability.' *Viefhaus.* 168 F.3d at 396.'" *Id.* at 1 256. The Court addressed Stevens' argument that he was in Connecticut while sending the threats and did not have the intent or ability to carry out the threats directed at the Tulsa (Oklahoma) Police Department.   The Court stated, "Although we may consider the speaker's apparent intention or ability to carry out the threat in determining whether the communication was a true threat, Mr. Stevens's argument suffers from at least two problems. First, nowhere on the face of the messages is there any indication of Mr. Stevens being located in Connecticut. and nowhere does the record show that any of the recipients knew that Mr. Stevens was located there. Second, even if a reasonable person in Tulsa who received these messages knew they came from Connecticut, he or she could reasonably conclude that Mr. Stevens had the wherewithal to travel to Tulsa and execute the threats. *Id.* at 1256.

The government argues that this standard is applicable here because the defendant was not in California near the headquarters of Google and YouTube, doesn't mean that the messages were not true threats. Similar to the threats in Stevens, the defendant did not tell the reader or the victim that he was in Missouri.  Though he had mentioned his whereabouts in St. Louis County in one of these messages.  However, Mr. Thilges never directly contacted Google, Mr. Dorsey, or Ms. Wojcicki while Stevens had directly contacted the Tulsa Police Department with his threats calling out specific officers.

8

The Court in *Stevens* found that the threats were directed toward a particular group or individual and contained specific acts of violence. *Id* at 1254.. The statements made in this Mr. Thilges case are to very broad groups.  While in *Stevens,* the Tulsa Police Department has approximately 987 employees, while Alphabet Inc. has 135,300 employees as of 2020 and the Democrat party makes up nearly 50% of the population of the United States of America. Stevens also addressed his statements directly to the party he was looking to threaten.  The belief that Democrats, Jack Dorsey, Susan Wojcicki, or the majority of Alphabet's employees would even see these threats given the material in which they were posted is highly unlikely as it usually the comments were made in support of content creators that shared a similar far-right ideology.

The government has argued that this point of a true threat versus political statement is a question for a reasonable jury.  Had this reached the standard needed for a true threat this would have been the case but that standard hasn't even been reached for a determination to need be made.

### III.   CLIMATE OF THE INTERNET AND ELECTION CYCLE OF 2020

It's important to acknowledge an element that exists in internet forums and comment sections, the internet troll.  An internet troll, purposely and frequently posts comments that are offensive or extreme with the intent to garner a negative reaction from the user or their community.  These users' words are never meant to be carried out in real life but are meant to stir the pot or create a toxic environment.  In the political and social sphere of 2020 these users were often from the far-left and far-right of society and their ideas would be considered

9

extreme by the average user but almost never viewed as a threat but a common occurrence in comment sections of videos and articles that are political in nature by those who frequented this realm in social media.  We cannot discount that the election cycle of 2020 brought out extreme rhetoric from many and the banning of President Donald Trump and other figures from Twitter and YouTube had led many to express their disapproval of CEOs Jack Dorsey and Susan Wojcicki, whose public profile mirrors that of any politician.  It is very obvious that this is the true for the Defendant as almost all of his comments began in June and July of 2020 which is when YouTube and Twitter began de-platforming high-profile "alt-right" figures.  When the affidavit of the search warrant intentionally leaves out the context of these comments, they are depriving the judge of being able to apply both social and historical context that is necessary to determine the intent of the comments made.

## CONCLUSION

The comments do not come to the level of true threats and had they been presented in this complete context in the affidavit for the search warrant the judge would have found that there was no probable cause to support a crime had been committed or would be committed and therefore no belief that evidence of a crime would be found upon a search.  The Defendant respectfully requests that the Court find the search warrant of the Defendant's home to be invalid.

Respectfully submitted,

s/ Shawn Goulet

SHAWN GOULET
Attorney for the Defendant
7036 Kingsbury Blvd.
St. Louis, Missouri 63130
(314) 550-4937
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Assistant United States Attorney.

/s/ Shawn A. Goulet
SHAWN GOULET