UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.  S1-4:20CR0707 AGF (SRW) |
| MATTHEW THILGES, | ) ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

COMES NOW the United States of America, by and through its attorneys Sayler Fleming, United States Attorney for the Eastern District of Missouri, and Colleen C. Lang, Assistant United States Attorney for said District, and responds to the defendant's supplemental motion to suppress statements and evidence, Doc. #62.

## I.    INTRODUCTION

On June 10, 2021, the defendant filed his first motion to suppress all evidence and statements.   In that motion, the defendant asked for the evidence to be suppressed by alleging that the first search warrant was based on "general" statements involving politics and violence that did not rise to a criminal violation. The defendant also argued that the second federal search warrant fails because it lacked probable cause that certain child pornography crimes existed, Doc. #34. The Government responded to that motion on July 21, 2021, Doc. #39.   On September 22, 2021, a superseding indictment was returned by the Grand Jury adding Count III (Illegal Possession of a Silencer, Title 26 U.S.C. Section 5861(i)).   The defendant filed a supplemental motion to suppress evidence and statements on December 7, 2021.   The

1

government now replies to the defendant's supplemental motions. The Government relies on its' statement of facts from their first response motion, see Doc. #39 at 2-6, and therefore will not repeat the facts herein.

## II.      LEGAL ANALYSIS

### A. THE FIRST FEDERAL SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE AND THE DEFENDANT'S THREATS WERE "TRUE THREATS."

1. The Search Warrant Was Valid and No Relevant Information was Omitted.

The defendant argues in his supplemental motion to suppress evidence that the first federal search warrant for his home is invalid because it is not supported by probable cause since information was omitted from the search warrant. The defense argues that the statements in the search warrant affidavit were incomplete because the surrounding context of the statements were not included. (Doc. #62 at 4). Specifically, the defendant points out that the threats were made within the comment section of YouTube videos and the videos contained "far-right" or "Q-Anon" ideology that was not mentioned in the affidavit. In the probable cause statement on page two (2), paragraph five (5), of the search warrant application, the affiant lays out that the threats were left as comments to videos online. Ex.1a. It further states that the threatening comments were directed at certain social media companies and their CEOs. Ex. 1a, page 2 at ¶ 5. The affidavit goes on to state that the target left the threatening comments on public videos on YouTube. Ex. 1a, pages 2-3, ¶ 6. The affidavit states that the owner of the platform located the threats posted on the platform and notified the authorities out of a concern for life and safety of others. Ex. 1a, page 2 at ¶ 5.

First, while the search warrant does not describe the videos that defendant posted his

2

threats under, it does not need to retain probable cause. The omission of the video content does not invalidate the search warrant because it does not affect the probable cause finding.

Second, the defendant has not met the burden of showing a deliberate falsehood or reckless disregard for the truth by the affiant. *See Franks v. Delaware* 438 U.S. 154 (1978) and *United States v. Smith,* 581 F.3d 692, 695 (8th Cir. 2009).  Further, "a warrant application need only show facts establishing probable cause, 'recklessness may be inferred from the . . . omission of information from an affidavit…only when the material omitted would have been clearly critical to the finding of probable cause.'" *Smith* at 695 citing *United States v. Ozar*, 50 F.3d 1440, 1445 (8th Cir. 1995).  Here, omission of the contents of the videos did not eliminate the nature of the threats from the defendant that were publicly posted under them. The videos contained "far-right" and "Q-Anon" ideology. "Q-Anon" supporters have baselessly accused many Hollywood actors, Democratic politicians, and high-ranking government officials of being in a child trafficking ring that conspires against Donald Trump. The addition of that information into the search warrant does not decrease the probable cause. The defendant's threats deal with specifically with killing Democrats, Alphabet employees, Jack Dorsey, and others.  The fact the defendant was watching "Q-Anon" videos only establishes that he truly believes the world would be a better a place without these types of people.  (See defendant's threat on page nine (9) of the search warrant affidavit, "Make the world a better place, shoot a democrat in the face." Ex. 1a.)

The defendant has not shown how the context of the videos negate the threats posted by the defendant, thus, the omission of the videos' content does not affect probable cause. The threats were still publicly posted. If the threats were posted under videos promoting "far-left" ideology or on videos that had no political or governmental relevance, they are still threats.

3

While Defendant never specifically requested a *Franks* hearing, the government believes that the defendant has not met his burden with regard to either prong in *Franks* and therefore not entitled to one. Had the content of the videos been in the warrant it would not have been clearly critical to the determination of whether the warrant had probable cause. The warrant is valid.

    2. <u>The threats are "true threats" and violate Title 18 U.S.C. Section 875(c).</u>

The defendant argues again in the supplemental motion that the defendant's statements are protected by the First Amendment and are not "true threats" in violation of the law.

The warrant lays out the online threats the defendant made, and those threats meet the elements of 875(c), thus, the warrant is valid. The threats by the defendant are much more than just general offensive opinions.  The threats go back as far as January of 2019 and are very frequent from July of 2020 until October of 2020.  The threats are very violent in nature and sometimes specific to a victim. There are approximately sixteen (16) threats in the warrant, which was just a sample of all the threats that had been identified and attributed to the defendant by law enforcement.

The defendant argues that the defendant did not deliver his threats directly to the individuals (Doc. #62 at page 7), however, the defendant threatened social media employees and CEOs on public social media websites. Several examples of the threats that are cited in the search warrant include: on July 8, 2020, the defendant posted on a public YouTube channel, "I do need violence. I need to kill alphabet/google/youtube employees now."  Then in another example from July 13, 2020, the defendant posted, "Make the world a better place, shoot a democrat in the face.  I have dibs on EVERY alphabet/google/youtube employee.  You guys can start wherever you want."  Defendant threatened again on YouTube on July 22, 2020, "Kill

4

youtube employees." On October 6, 2020, the defendant threatened on YouTube, "October 6, 2020 – alphabet/google/youtube is a terrorist organization. Every employee must be PUT TO DEATH for sedition , subversion , insurrection , treason and crimes against humanity. The science is settled. KILL THEM ALL and DO IT NOW !"   See Ex. 1a at pages 9-11.   Thus, the defendant was conveying his message to the individuals because he was posting the threats to the employees on the companies' website.

These threats made by the defendant are not protected by the First Amendment. The First Amendment does not prevent the government from prohibiting and punishing speech that constitutes a true threat. In evaluating whether threats are a "true threat" versus comments covered by the First Amendment, there is no "bright-line" test, but Courts across the country have followed the Supreme Court's analysis in *Virginia v. Black,* and expanded upon it. After a Court has determined that a threat is not protected by the First Amendment, then the Court determines whether a reasonable jury could find that the threats are true threats. *United States v. Stevens*, 881 F.3d 1249, 1255 (10th Cir. 2018).   In following *Black,* the defendant's statements are "true threats" because they communicate a serious expression of an intent to commit violence to a particular individual or individuals, even if the defendant did not intend to carry out the threat. See *Virginia v. Black* at 359-360.

This objective test for what constitutes a "true threat" was adopted by the Eighth Circuit in *United States v. Mabie*, 663 F.3d 322 at 332 (8th Cir. 2011). The Eighth Circuit upheld Mabie's convictions under 875(c) and 876(c)[1]  and found that Mabie's threats to law enforcement were true threats.   In following *Black*, the Eighth Circuit wrote, "we *have* adopted

---

[1] Title 18 U.S.C. Section 876(c) criminalizes the mailing of threatening communications and is similar in wording to 875(c).

an objective test for determining whether a communication is a true threat. This objective test, which has been applied repeatedly since *Black,* does not consider the subjective intent of the speaker." *Mabie* at 332.

    The defendant argues in his motion that the defendant threatened very broad groups: Democrats, the police, Alphabet Inc. employees, YouTube employees, Jack Dorsey of Twitter, and Susan Wojcicki of YouTube.   Defendant also argues that it was unlikely the intended targets would even seen the threats. However, these two factors do not lead to the defendant's threats being protected by the First Amendment. The case law on true threats does not have a prohibition against how large the group of individuals is that is being threatened.   In *Black,* the Court said a that threat can be to an individual or group of individuals, but never limited how large the group can be.   If the defendant hates all Alphabet employees and threatens to kill all Alphabet employees, it is still a violent threat to their lives even if he is unable to kill all Alphabet employees.   The defendant is not specific as to which Alphabet employees he wants to kill, because (based on the context of his threats) it really does not matter to him which Alphabet employees die, as long as it is an Alphabet employee. He is instilling fear in all persons in that group.   As to the defendant's arguments that his comments were posted on videos created by similar "far-right" supporters, the defendant is still posting the threats on a public social media forum, where they were found, and taken down by YouTube.   There is no standard on "how" the threats have to be conveyed.

    Thus, the defendant's threats are not protected by the First Amendment because he made them to a large group of individuals and because he posted them on a publicly available website that was more often frequented by "far-right" supporters.   The threats are "true threats" because they communicate an act of intended violence to a specific group of people.

6

### 3. The Climate of the Internet And Election Cycle Contribute to the Threats.

The defendant tries to blame the extreme rhetoric of the 2020 election cycle for his threats and claims this type of speech was common at the time in the comment sections of videos and articles.   First, the defense gives no concrete examples of how these types of threats were common at the time. Second, based upon pages eleven (11) and twelve (12) of the search warrant affidavit, the defendant's violent threats and thoughts go back to at least January of 2019, which is well before Donald Trump was banned from many social media sites. Information about the political climate was not relevant to the warrant. Third, the political climate, as well as, the existence of "far-right" and Q-Anon ideology was common knowledge at the time of signing of the warrant.

Lastly, as is cited in *United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999), even when the threat accompanies political speech, the defendant is not shielded from culpability. The defendant's messages go beyond political disagreements and go straight to threats to kill democrats.   The defendant has crossed the threshold of political rhetoric to criminal threats. Also see *United States v. Wheeler,* 776 F.3d 736,742 (10th Cir. 2015), (in "true threat" cases the Court has consistently stated that "whether a defendant's statement is a true threat or mere political speech is a question for the jury.")

The threats in the *United States v. Stevens*, 881 F.3d 1249 (10th 2018), case are similar to the threats in this case. *Id*. at 1256-1257.   The Court in *Stevens* found that the threats were directed toward a particular group or individual and contained specific acts of violence. *Id.* at 1254.   The Court in *Stevens* found that a reasonable jury could find that these were true threats. Similarly, in this case, the defendant invokes violence towards social media employees even if he does not specifically say in each and every threat that he will be the person to kill

7

them.  "Fuck the government. Kill ALL democrats. Start at alphabet/google/youtube. KILL THEM ALL." "Make the world a better place, shoot a democrat in the face. I have dibs on EVERY alphabet/google/youtube employee. You guys can start wherever you want." Ex. 1a at 9, ¶¶ 25c and d.

The threats of the defendant are "true threats" because they go beyond just offensive and unpopular venting.   The threats direct real harm at individuals and groups of people.

In this case, the affidavit provided a sufficient basis to find probable cause.   Law enforcement had good reason to believe evidence of the threats would be on the defendant's computer devices or cell phone in his home based on their investigation.   The threats were a criminal act, not protected by the First Amendment. The reviewing magistrate's finding that the search warrant for the defendant's home contained the requisite probable cause should be given deference.   In conclusion, evidence obtained from the first federal search warrant should not be suppressed because the defendant's threats described within the application are true threats and violation of federal law.

> B. **THERE WAS NO BAD FAITH BY LAW ENFORCEMENT IN THIS CASE, SO EVEN IF THE COURT WERE TO FIND THAT THE SEARCH WARRANTS LACKED PROBABLE CAUSE GOOD FAITH STILL APPLIES.**

Even if the Court were to find that either of the federal search warrants were lacking in probable cause, good faith still applies. There has been absolutely no showing that any law enforcement officers in this case acted in bad faith.   In this case, law enforcement officers acted in good faith relying on the search warrant to search the home for evidence of online threats, and later to search the computer devices for child pornography.   See *United States v. Leon*, 468 U.S. 897, 922 (1984).

8

Law enforcement's reliance on the warrants was objectively reasonable because the supporting affidavits did not contain false or recklessly made statements or material omissions. There is no evidence that the Magistrate Judge abandoned his judicial role when he issued the warrants. Moreover, the supporting affidavits did not lack in indicia or probable cause sufficient to make his reliance on the affidavit unreasonable. Lastly, the warrant was not facially deficient such that law enforcement officers could have presumed it was valid. *United States v. Grant,* 490 F.3d 627, 632-33 (8th Cir. 1997). The good faith exception to the exclusionary rule can apply in this case if the Court were to determine the search warrants lacked the requisite probable cause.

### III.    CONCLUSION

The evidence should not be suppressed because it was seized and searched in accordance with lawful search warrants.

Wherefore, the government requests the defendant's motion to suppress be denied.

Respectfully submitted,
SAYLER FLEMING
United States Attorney

    */s/ Colleen C. Lang*
COLLEEN C. LANG #56872MO
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon attorney for defendant.

                                                            */s/ Colleen C. Lang*
                                                         COLLEEN C. LANG, #56872MO